IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**DALE ERNEST DENOYER,**

     **Petitioner,**

   **v.**           CASE NO.  16-3146-JWL
**WARDEN, et al.,**

     **Respondents.**

## MEMORANDUM AND ORDER

Petitioner filed this pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 in the District of Maryland, which transferred it to the District of Columbia, which transferred it to this court where it should have been filed.  Petitioner is currently confined at the United States Penitentiary in Leavenworth, Kansas (USPL).  The only proper respondent is Warden, USPL.[1] Petitioner challenges the validity of his parole revocation proceedings.  This court issued an Order to Show Cause, respondent filed an Answer and Return (Doc. 22)("A&R), petitioner has filed his Traverse (Doc. 24), and the matter is ready for determination.  The court finds that petitioner fails to show that the challenged revocation proceedings violated the Constitution or laws of the United States and therefore fails to state a claim for federal habeas corpus relief.  Accordingly, the petition is denied.

## Background Facts

---

[1] Petitioner names several improper respondents, despite reciting in his petition that the only proper respondent in a habeas action is the petitioner's custodian.  He also captioned his petition in the wrong judicial district claiming it is an action against the United States Parole Commission and must be filed in the District of Columbia.  He then erroneously mailed it to the clerk in the District of Maryland, which transferred it 7 days later to court named in the caption.  Petitioner included among his list of respondents the Warden at the Lawrence Detention Center, CCA, in Leavenworth, Kansas, where he was confined when he filed this petition.  The DC court issued a show cause order as to why the petition should not be transferred, got answers from both parties, and transferred the case to this court.  The Warden at the USPL is the sole proper respondent and this is the proper venue.  Petitioner paid the filing fee.

1

In 1985, petitioner was found guilty in the District of South Dakota of first degree burglary and escape and sentenced to an aggregate term of 30 years in prison. While in prison, he was convicted of possession of a prohibited object and sentenced to a consecutive non-parolable federal term of 30 months. In 2004, petitioner was released on supervised released which was revoked, and he was sentenced to one year and one day in prison. Subsequently, petitioner was released on parole two times and returned to prison after parole was revoked. In December 2012, petitioner was conditionally released for the fourth time subject to parole conditions until the expiration of his sentence on September 15, 2022.

On June 19, 2013, a police officer in St. Joseph, Missouri, wrote a report on Mr. DeNoyer based on the statement of a loss-prevention employee from the local Menards store that petitioner had written large checks in the store on two consecutive days and was attempting to write another when the store contacted the bank and found that the account did not have money in it. See A&R (Doc. 22) Attachments (Doc. 22-17) at 2-3. On July 17, 2013, petitioner's probation officer issued a Parole Violation Report. *Id.* (Doc. 22-6) at 1. Under "Violation(s)," he wrote that a detective with the St. Joseph Police Department had contacted him and advised that on June 28, 2013, Mr. DeNoyer was charged with felony theft and an arrest warrant issued after DeNoyer had opened a checking account with $400 and then wrote checks to Menards totaling over $2,000. Petitioner was also considered an absconder for failure to report. On August 7, 2013, a USPC case analyst issued a Warrant Application recommending that the USPC issue a parole violator warrant. *Id.* (Doc. 22-7) at 1-2. A copy of the application sent to petitioner included notification of his rights during revocation proceedings. The Application listed the following two charges: "Charge No. 1 – Law Violation. A) Theft (Bank Fraud); B) Theft (Retail)" based on the check written by petitioner for over $500 at Menards and "Charge

No. 2 – Law Violation. A) Theft (Bank Fraud); B) Theft (Retail)" based on the check written for over $1600 at Menards. The notification explained that petitioner had opened a checking account on June 17, 2013, with an origination amount of $400 then that day and the next day had written the bad checks at Menards and that this information was based on the Parole Violation Report and "charging documents dated 6-18-13."

In October and December of 2015, Mr. DeNoyer was found guilty of state charges arising from the offenses committed at Menards.[2] On December 3, 2015, after petitioner had completed his 4-month jail sentence, the U.S. Marshal's Service executed the parole violator warrant.[3] A&R (Doc. 1) at 4; (Doc. 22-10) at 1. On December 17, 2015, USPC Case Analyst Moore wrote the Missouri probation office asking them to "arrange for a preliminary interview to be conducted without unnecessary delay, normally within 24 hours of notice of the parolee's arrest on the violator warrant" and to forward the report of the preliminary interview to the Commission within two days of the interview. Moore instructed the probation office that the "Commission must advise the offender, within 21 days following the preliminary interview, if there is probable cause to continue holding him in custody pending a final revocation hearing."[4] *Id.*

---

[2] In October of 2015, the Fifth Judicial Circuit Court in Buchanan County, Missouri entered judgment finding that the original 2013 charge of "Theft/Stealing" was "dismissed by Prosec/Nolle Pros," and that Mr. DeNoyer pled guilty to the original 2013 charge of "Passing Bad Check-$500 or More-No Account/Insufficient Funds." Id. (Doc. 22-8) at 1. Petitioner was sentenced to 4 months in the county jail and given credit for time served. Id. In December of 2015, the 43rd Judicial District Court, Livingston County, Missouri entered judgment finding that the original charge of "Theft/Stealing" was amended to "Passing Bad Check-$500 or more-No Account/Insufficient Funds" and sentenced Mr. DeNoyer upon his plea of guilty to a term of 7 years consecutive to all other sentences along with 5 years supervised probation. Id. (Doc. 22-1) at 1.

[3] Petitioner indicated in his administrative appeal that the parole violator warrant was lodged as a detainer. *Id.* (Doc. 22-15) at 4.

[4] Moore asked the probation office to provide copies of arrests reports and judgments if Mr. DeNoyer had been convicted of a new criminal offense and to specify if he admitted to the criminal conduct or to the arrest only. Moore also reported that Mr. DeNoyer was then being held at the Caldwell County Jail. *Id.*

On December 18, 2015, a Senior U.S. probation officer conducted a preliminary interview at the Corrections Corporation of America facility in Leavenworth, Kansas. *Id.* "Summary Report of Preliminary Interview" (Doc. 22-11). Mr. Denoyer was informed of his rights and expressed his understanding, waived counsel, and did not request any witnesses. He denied the charges after they were reviewed,[5] and at the conclusion of the interview elected to have a revocation hearing upon his return to a federal institution with representation by legal counsel. The officer determined that probable cause existed to believe that Mr. DeNoyer had violated the conditions of his parole[6] and recommended a custodial sentence. The Summary Report was signed by the officer on the date of the hearing, and sent to Case Analyst Moore in correspondence dated December 21, 2015. The Report indicates that a copy was sent on the same date to Mr. DeNoyer at the CCA.[7] On January 19, 2016, petitioner was notified that the Commission had found probable and had ordered a revocation hearing. (Doc. 22-16) at 1.[8]

On March 7, 2016, Mr. DeNoyer filed this petition for writ of habeas corpus claiming that the law violations charged in the parole violator report and the original warrant were false,

---

[5]  The charged "law violations" were listed under "Review of Charges" as: "Charge No. 1: (A) theft (Bank Fraud; (B) Theft (retail)"; and "Charge No. 2: (A) Theft (Bank Fraud); (B) Theft (retail)." *Id.* at 2.

[6]  The interviewing officer recommended that probable cause be found as to all three charged violations as follows: Charge No. 1 Law Violation based on the Violation Report, documentation to that report, and DeNoyer's entry of a guilty plea and 4-month sentence in October 2015 in Buchanan County, Missouri Court; Charge No. 2 Law Violation based on the same report and documentation as well as DeNoyer's guilty plea to felony theft and 7-year suspended sentence in December 2015 in Livingston County, Missouri Court; and Charge No. 3 Failure to Report for Supervision.

[7]  On January 4, 2016, the Commission issued a "Supplement" to the Parole Violator Warrant recommendation, which added to charge 1 the information of petitioner's October 2015 conviction and 4-month sentence and to Charge 2 petitioner's December 2015 conviction and 7-year suspended sentence. *Id.* (Doc. 22-12). This Supplement listed Charge 1 and Charge 2 with no reference to bank fraud and instead as "Passing Bad-Check $500 or More – No Account/Insufficient Funds – Conviction." *Id.* However, the Supplement plainly showed that each charge corresponded with the "bank fraud/theft charges" that had been listed in the original warrant *Id.*

[8]  The Commission specified that it made no finding on the charges that included the term bank fraud and found probable cause only on the passing-bad-check and failure-to-report charges.

4

that the preliminary hearing and notification of the finding of probable cause were not timely, and that the parole charges must be dismissed and his parole reinstated.

On April 26, 2016, a Commission Hearing Examiner conducted petitioner's Revocation Hearing at the Oklahoma Federal Treatment Center. *Id.*, "Revocation Hearing Summary" (Doc. 22-13). Petitioner was represented by a Federal Public Defender who argued that the hearing should not go forward and parole should be reinstated because it was being conducted "beyond the 90 day time frame." See *id.* at 1. Counsel was asked "[h]ow the delay had adversely affected her client's ability to defend himself against any of the charges" and responded that the delay presented no adverse effect. *Id.* The examiner found that petitioner had violated the conditions of his release based on his admissions at the hearing to the passing-bad-check charges and his new convictions of those charges.[9] Petitioner's only dispute was with the total amount of $2102.12, which the examiner resolved by referring to the Missouri court judgment that "clearly lists all the bad checks and amounts." *Id.* at 2. The charges were Category 3 severity because they involved theft of over $2000 in bad checks and an administrative violation. The examiner also noted that Mr. DeNoyer was appearing for his fourth revocation hearing and had defended by trying to minimize his violation behavior. The examiner recommended revocation of parole, that none of the time spent on parole be credited, and a violator term in the middle of the "Re-parole Guideline Range of 24-32 months." *Id.* at 3.

As a result of the revocation hearing, petitioner's parole was revoked on May 26, 2016.

---

[9] Specifically, the examiner found petitioner guilty of "Charge No. 1 – Law Violation – Passing Bad Check over $500 (conviction)" based on petitioner's new conviction, his own admission "to the above charge," and his statement that "he wrote a check for $568.65 and did not have the funds to cover it in his account." The examiner also found petitioner guilty of "Charge No. 2 – Law Violation – Passing Bad Checks over $500 (conviction) based upon his new conviction and admission to the charge. He also found petitioner guilty of Charge No. 3, Failure to Report, based upon petitioner's statements that he stopped reporting after July because he thought he would be arrested as well as his probation officer's written report.

*Id.* (Doc. 22-14) at 1-2.[10]  The following reasons were provided for the decision in the Notice of Action:

> Your parole violation behavior has been rated as criminal conduct of Category Three severity because it involved: Passing Bad Checks over $500.  Your salient factor score is 2. . .  As of May 3, 2016, you have been in confinement as a result of your violation behavior for a total of 11 month(s).  Guidelines established by the Commission indicate a customary range of 24-32 months to be served before release.  After review of all relevant factors and information, a departure from the guidelines at this consideration is not warranted.

*Id.* at 2.  Petitioner submitted a timely appeal to the USPC that included the three claims raised in the instant petition.  A final decision was due on this appeal by August 21, 2016.

## **Grounds**

Petitioner presents three grounds in his petition.  As Ground (1) he claims that procedural due process was violated because Case Analyst Moore "set guidelines" for his revocation proceedings in her letter dated December 17, 2015, and the USPC violated those guidelines.  As factual support, he alleges the following.  Under Moore's guidelines, the USPC was required to conduct his preliminary interview within 5 days of petitioner's December 3 arrest, but held it 10 days late.  The USPC was also required to advise him within 21 days following his December 18 preliminary interview that probable cause was found to continue holding him in custody pending a final revocation hearing, but they failed to advise him within that time frame.  As Ground (2), petitioner claims that the "Warrant Application" dated August 7, 2013 violated due process, was defective and did "not follow guidelines for warrants" in that the two counts of bank fraud "law violations" listed in the original USPC warrant and his probation officer's Parole Violation

---

[10] The Notice of Action repeated that the USPC found that petitioner had violated the conditions of release as charged with respect to Charge No. 1 – Law Violation – Passing Bad Checks over $500 (conviction) based on his "admission to the Hearing Examiner and (his) conviction on October 16, 2015 by the 5th Judicial Circuit Court, Buchanan County, Missouri;" and to Charge No. 2 – Law Violation – Passing Bad Checks over $500 (conviction) based on his "admission to the Hearing Examiner and (his) conviction on October 16, 2015 by the 5th Judicial Circuit Court, Buchanan County, Missouri" and as to Charge No. 3.  *Id.* (Doc. 22-14) at 2.  *Id.* at 1.

Report were false and without factual basis. As factual support, he alleges that the Buchanan County Attorney charged him with "stealing by deceit" and passing bad checks, he pleaded guilty to the latter, and he was never charged with or convicted of bank fraud.[11] As Ground (3), petitioner claims a due process violation. In support, he repeats his allegations that the law violations in the warrant and Parole Violation Report were false. He further alleges that a false statement was "made to establish probable cause for arrest" that was "knowingly false" and demonstrated a "reckless disregard for the truth." Petitioner asserts that the parole violation charges and the warrant should be dismissed, his continued incarceration is not warranted, and his parole release should be re-established.

## Standards

"[T]he revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." *Morrissey v. Brewer*, 408 U.S. 471, 480, 489 (1972); *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010) (citing *id.* at 489). "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Id.* In *Morrissey*, the United States Supreme Court established the following minimal due process requirements for preliminary and final parole revocation proceedings:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or

---

[11] He argues that the USPC should have withdrawn the initial warrant, then re-applied for a warrant "once the State of Missouri was finished with prosecution," and used the "proper grounds" for the law violations. As noted, the USPC supplemented the warrant with the updated information.

>   lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.  Congress codified these procedural safeguards at 18 U.S.C. §§ 4213(c) (notice) and 4214 (preliminary and final hearings).[12]  Federal regulations implement the statutes.[13]

---

[12]   18 U.S.C. § 4209 pertinently provides that "in every case, the Commission shall impose" as conditions of parole that the parolee not commit another Federal, State, or local crime."  18 U.S.C. § 4213(a)(2) provides: that "[i]f any parolee is alleged to have violated his parole, the Commission may . . .issue a warrant and retake the parolee as provided in this section."  Subsection (2)(b) further provides that:

>   (b) Any summons or warrant issued under this section shall be issued by the Commission as soon as practicable after discovery of the alleged violation, except when delay is deemed necessary. Imprisonment in an institution shall not be deemed grounds for delay of such issuance, except that, in the case of any parolee charged with a criminal offense, issuance of a summons or warrant may be suspended pending disposition of the charge.

18 U.S.C. § 4214 governs revocation of parole and pertinently provides as follows:

>   (a)(1) Except as provided in subsections (b) and (c), any alleged parole violator summoned or retaken under section 4213 shall be accorded the opportunity to have—
>
>   (A) a preliminary hearing at or reasonably near the place of the alleged parole violation or arrest, without unnecessary delay, to determine if there is probable cause to believe that he has violated a condition of his parole; and upon a finding of probable cause a digest shall be prepared by the Commission setting forth in writing the factors considered and the reasons for the decision, a copy of which shall be given to the parolee within a reasonable period of time . . . .
>
>   (B) upon a finding of probable cause under subparagraph (1)(A), a revocation hearing at or reasonably near the place of the alleged parole violation or arrest within sixty days of such determination of probable cause except that a revocation hearing may be held at the same time and place set for the preliminary hearing.
>
>   (2) Hearings held pursuant to subparagraph (1) of this subsection shall be conducted by the Commission in accordance with the following procedures:
>
>   (A) notice to the parolee of the conditions of parole alleged to have been violated, and the time, place, and purposes of the scheduled hearing;
>
>   (B) opportunity for the parolee to be represented by an attorney. . . .
>
>   (C) opportunity for the parolee to appear and testify, and present witnesses and relevant evidence on his own behalf; and
>
>   (D) opportunity for the parolee to be apprised of the evidence against him and, if he so requests, to confront and cross-examine adverse witnesses, unless the Commission specifically finds substantial reason for not so allowing.

Under 18 U.S.C. § 4214(b)(1), "[c]onviction for any criminal offense committed subsequent to release on parole shall constitute probable cause for purposes of subsection (a) of this section."  18 U.S.C. § 4214(c) provides in pertinent part that "[a]ny alleged parole violator who is summoned or retaken by warrant under section 4213 . . . shall receive a revocation hearing within ninety days of the date of retaking."

To obtain habeas corpus relief, an inmate must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S. C. § 2241(c)(3). Federal court review of Parole Commission decisions is "quite limited." The Tenth Circuit set forth the following standard for review of parole revocation decisions:

> . . . . The Commission's decision will stand unless it is arbitrary and capricious. It is not the function of courts to review the Board's discretion in denying parole or to repass on the credibility of reports received by the Board in making its determination. A reviewing court must make some inquiry into the factual basis for the Commission's decision. But the inquiry is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons.

*Curtis*, 626 F.3d at 543 (quoting *Peltier v. Booker*, 348 F.3d 888, 892–93 (10th Cir.2003);

---

[13]   28 C.F.R. § 2.44 pertinently provides:

(a) If a parolee is alleged to have violated the conditions of his release, and satisfactory evidence thereof is presented, the Commission or a member thereof may: (1) Issue a summons requiring the offender to appear for a preliminary interview or local revocation hearing . . . . A summons or warrant may be issued . . . only by the Commission, or a member thereof.

28 C.F.R. § 2.48 pertinently provides:

(a) Interviewing officer. A parolee who is retaken on a warrant issued by a Commissioner shall be given a preliminary interview by an official designated by the Regional Commissioner to enable the Commission to determine if there is probable cause to believe that the parolee has violated his parole as charged, and if so, whether a revocation hearing should be conducted. . . .

(b) . . . At the beginning of the preliminary interview, the interviewing officer shall ascertain that the Warrant Application has been given to the parolee as required by § 2.46(b) . . .

(c) . . . At the preliminary interview, the interviewing officer shall review the violation charges with the parolee, apprise the parolee of the evidence which has been presented to the Commission, receive the statements of witnesses and documentary evidence on behalf of the parolee, and allow cross-examination of those witnesses in attendance. . . .

(d) At the conclusion of the preliminary interview, the interviewing officer shall inform the parolee of his recommended decision as to whether there is probable cause to believe that the parolee has violated the conditions of his release, and shall submit to the Commission a digest of the interview together with his recommended decision. . . . (2) If the interviewing officer's recommended decision is that probable cause may be found . . , the responsible Regional Commissioner shall notify the parolee of his (or her) final decision concerning probable cause within 21 days of the date of the preliminary interview.

*McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 813 (10th Cir. 1997)(parole board's decision should not be disturbed by the courts unless there is a clear showing of arbitrary and capricious action or abuse of discretion.).

**Discussion**

The court has carefully reviewed the administrative record of petitioner's parole revocation proceedings and finds that his claims do not entitle him to relief. The court dismisses Ground (1) for two main reasons. First, respondent is correct that petitioner is not entitled to habeas corpus relief based on the alleged delays because he has alleged no facts showing that he was prejudiced. It is undisputed that petitioner did not receive a preliminary hearing within hours or a few days of his arrest, but petitioner does not convince the court that either his or Moore's time limit was based on federal or constitutional law.[14] It is undisputed that petitioner did not receive a parole revocation hearing within the statutory and regulatory time limits.[15] In addition, the record shows that petitioner did not receive notification of the Commission's final decision on probable cause within 21-days of the preliminary interview as required in 28 C.F.R. § 2.48(d)(3). Instead, the Commission's notice was dated 34 days after the interview. "The Commission's failure to meet a statutory deadline, however, is not grounds for habeas corpus relief unless the delay is so prejudicial to the parolee that it violates his due process rights."

---

[14] These time limits do not appear in the regulation on preliminary interviews, 28 C.F.R. 2.48 or in 18 U.S.C. § 4214(a)(1)(A), which provides that an alleged parole violator shall be accorded the opportunity to have a preliminary hearing "without unnecessary delay." *Id.* Case Analyst Moore's "guidelines" in her letter asking the Missouri probation office to arrange a preliminary hearing "without unnecessary delay" and "normally within 24 hours of the notice of the parolee's arrest" do not amount to constitutional or federal law. Moore's letter was dated 14 days after petitioner's arrest. The preliminary interview was held the next day.

[15] 28 C.F.R. § 2.49(f) provides that "a local revocation hearing shall be scheduled to be held within sixty days of the probable cause determination," while "[i]nstitutional revocation hearings shall be scheduled within ninety days of the date of the execution of the violator warrant. . . ." Petitioner's revocation hearing was held in Oklahoma 145 days after his arrest. However, petitioner had received the preliminary interview near the time of his arrest. Petitioner's reliance on Fed. R. Crim. P. 32.1 is misplaced because that rule governs revocations of probation and supervised release, which are criminal proceedings conducted by a magistrate judge or a district judge. Petitioner presents no authority for its application to parole revocation proceedings, which are administrative.

*Howard v. Caufield*, 765 F.3d 1, 11 (D.C. Cir. 2014)(citing *Sutherland v. McCall*, 709 F.2d 730, 732 (D.C. Cir. 1983); see *Morrissey*, 408 U.S. at 488–89); *Nabors v. Warden, U.S. Penitentiary*, 989 F.2d 507, *2 (10th Cir. 1993)(unpublished). The Tenth Circuit has held that delays, such as those that occurred in petitioner's case, do not, per se, constitute a violation of due process entitling an accused parole violator to immediate release. *McNeal v. United States*, 553 F.2d 66, 68 (10th Cir. 1977). Instead, "to establish a legal right to habeas relief, the delay, taking into consideration all the circumstances, must also be prejudicial." *Id.*; see also *Harris v. Day*, 649 F.2d 755, 761-62 (10th Cir. 1981). Petitioner alleges in his petition only that the USPC violated his due process rights by not complying with federal deadlines. The federal statutes and regulations "do not obviate the need for a showing of prejudice." *Paul v. McFadin*, 117 F.3d 1428, *2 (10th Cir. 1997)(unpublished). While the specific time periods contained in statutes "bear upon whether the delay in this case was unreasonable, they do not entitle (petitioner) to habeas relief absent prejudice." *Id.* (citing *Villarreal v. USPC*, 985 F.2d 835, 837 (5th Cir. 1993)(even though hearing was not held within the specific ninety-day period required by 18 U.S.C. § 4214(c), habeas relief still requires a showing of prejudice, and 154-day delay between arrest and final hearing did not violate due process absent showing of prejudice). Petitioner has not shown or even alleged that any prejudice resulted from these admitted delays. The record indicates that petitioner was sent a copy of the "Summary Report of Preliminary Hearing" on the day after his interview.[16] He does not claim that he lacked notification of any information that the hearing officer and the Commission were required to provide prior to his revocation hearing.

---

[16]  18 U.S.C. § 4214(a)(1)(A) provides that "upon a finding of probable cause" at the preliminary hearing, the hearing officer shall prepare a digest "setting forth in writing the factors considered and the reasons for the decision" and that a copy "shall be given to the parolee within a reasonable period of time." 28 C.F.R. § 2.48(d) provides that "at the conclusion of the preliminary interview, the interviewing officer shall inform the parolee of the recommended decision" on probable cause and shall submit a digest of the interview to the Commission.

Petitioner was given credit for the time he spent in confinement prior to his revocation hearing. Given that petitioner has shown no prejudice, the Commission's failure to hold a timely parole revocation hearing does not entitle him to habeas corpus relief. See *Nabors*, 989 F.2d 507, at *3 (collecting cases); *McFadin*, 117 F.3d 1428 at *2; *Howard*, 765 F.3d at 11–12; *Mellinger v. Kastner*, 2015 WL 1061829, *2–3 (W.D. Okla. Feb. 12, 2015).

For similar reasons, the court agrees with respondents' argument in the A&R that petitioner's claims of delays must be dismissed as moot. Respondents allege that even though time limits were missed, petitioner was provided a preliminary interview, probable cause notification, and a parole revocation hearing, and that this is all the relief he could receive if this court were to find merit to his claims. In his Traverse, petitioner does not allege any facts or legal theories to counter respondent's mootness arguments. Instead, he mainly repeats the grounds in his petition and attaches a duplicate of his Brief in Support (Doc. 24-1) that he already submitted with his petition (Doc. 1).[17] Petitioner's bald denial of "each and every Answer and Return," his re-submission of documents from the record without discussion, and his baseless objection to respondent's citation of an unpublished case do not present any grounds or counter argument for holding that this action is not moot. Petitioner was provided a preliminary interview and notice of the Commission's finding of probable cause before this action was even filed. His final revocation hearing was conducted after he filed this petition. Petitioner is not entitled to habeas corpus relief based on the any of the alleged delays for the reason that he "has already received the only remedy to which he is entitled." *Nabors*, 989 F.2d 507, at*2. "When an inmate has not been afforded a timely hearing . . , the proper course is to grant him a hearing at the earliest possible date." *Id.* (citing *United States v. Miller*, 599 F.2d 249, 251 (8th Cir.

---

[17] Petitioner only adds to his Brief insertions of citations to two cases from 1948 and 1971 that generally provide for judicial review of parole revocation decisions.

1979)).  During the delays, statutory law might have entitled petitioner to an order compelling a timely hearing or bail; however, "the extreme remedy of release" was not available.  *Barton v. Malley*, 626 F.2d 151, 159 (10th Cir. 1980); *Nabors*, 989 F.2d 507, at*2 (Without a showing of prejudice, the failure to hold a revocation hearing may be a ground for mandamus relief requiring the USPC to hold a hearing, but it not a basis for habeas relief.).  Petitioner's present incarceration stems from the decision made after his parole revocation hearing was held.  The record reflects that his revocation hearing was clearly adequate in all respects.  Any prior violation of time limits "no longer bears upon his incarceration."  *Barton*, 626 F.2d at 159.

Petitioner's two other grounds, both asserting that the charged violations were false or defective, are denied because they utterly lack factual and legal merit.  Petitioner does not allege facts showing that his probation officer, the hearing officer, or any other USPC official involved in his revocation proceedings alleged false parole violation charges against him, knowingly or otherwise.  Every recitation in the record of the "law violation" charges, and there are many, was clearly based upon petitioner's conduct in writing bad checks at Menards.  The initial description of the violation charges by petitioner's parole officer was based on information from a police detective and was documented by the police report and the Menards employee's statement.  It is not the function of this court to repass on the credibility of reports that were received by the USPC, and petitioner has made no attempt to challenge any evidence that was relied upon to establish his violation behavior.  Petitioner makes too much of the fact that the phrase "bank fraud" was included in the summaries of the charged law violations in the Violation Report and the original Warrant Application.  This term was reasonably descriptive of Mr. DeNoyer's violation behavior, which included fraudulent conduct toward the bank and the retailer.  The

violator warrant was not a criminal warrant charging a statutory crime.[18]  In any event, the Warrant Application was amended to remove the phrase "bank fraud."  The "law violations" that were reviewed at petitioner's preliminary interview and revocation hearing and listed in the summaries of those proceedings and that petitioner was found to have violated in the Notice of Action were his passing bad checks.  Petitioner never suggests that this mere change in terminology somehow denied him notice of the charges for purposes of defending against them at his revocation hearing.[19]  He could not credibly make such an argument, since the charges throughout petitioner's revocation proceedings were unmistakably based upon his conduct at Menards that culminated in his Missouri state charges and convictions. [20]  Petitioner cites no applicable federal statutory or constitutional authority, and the court finds none, mandating that the charges in the initial parole violation report, which is often issued long before trial on state charges, must be framed by using precisely the same terminology as eventually appears in the State's crime-charging documents or the state court judgments of conviction.

Nothing in petitioner's allegations or the administrative record indicates any arbitrary and capricious action by the USPC in petitioner's case.  Petitioner does not dispute the fact or length

---

[18]    Parole violator warrants are administrative warrants rather than judicial warrants and petitioner does not credibly argue that they must be judged by the same standards as judicial warrants issued in a criminal case. "Section 4213 expressly authorizes only 'the Commission' to issue a parole violator 'warrant' and thereby provides for an administrative warrant." *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 876 (9th Cir. 2007)(citing 18 U.S.C. § 4213(a)).  "Only in replacing parole with supervised release did Congress shift issuing authority to 'the court' and thereby use the term 'warrant' in the ordinary sense of a judicial warrant." *Id.* (citing 18 U.S.C. § 3606; see *Gozlon-Peretz v. United States*, 498 U.S. 395, 400-01 (1991)).

[19]    "Although the allegations in a motion to revoke probation need not be as specific as an indictment, they must be sufficient to apprise the probationer of the conditions of his probation which he is alleged to have violated, as well as the dates and events which support the charge."  See *Kartman v. Parratt*, 397 F.Supp. 531 (D.Neb. 1975).

[20]    18 U.S.C. § 4213(a) "expressly authorizes the Commission to issue a warrant upon a mere allegation of a parole violation." *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 874 (9th Cir. 2007).  "The statute's only other express requirements regard the issuer ("the Commission"), the timing ("as soon as practicable after discovery of the alleged violation"), and the contents of the warrant ("written notice" of the alleged violation, the parolee's rights, and possible consequences)." *Id*. (citing § 4213(a)-(c)).  The implementing regulation adds only that "satisfactory evidence" of the alleged violation is required.  28 C.F.R. § 2.44(a).

of his original convictions or the length of his parole violator term. Furthermore, he does not dispute any of the details of his parole revocation, including the fact that the USPC revoked his parole as a result of his criminal conduct in the State of Missouri while on parole. See *Munn v. Peterson*, 156 F. App'x 85, 87 (10th Cir. 2005). Petitioner does not dispute that he received a revocation hearing at which he was represented by counsel, permitted to present evidence, afforded the right to be heard, and provided a written statement by the Commission of the basis for the hearing examiner's findings and the reasons parole was revoked. See *Pride v. Herrera*, 28 Fed. App'x 891, 894 (10th Cir. 2001). The court has made inquiry into the factual basis for the Commission's decision and finds that there is unquestionably a rational basis in the record for the Commission's conclusions embodied in its statement of reasons. Petitioner's admission that he wrote bad checks, his state court convictions arising from his bad-check writing and the record showing the amount of those checks unquestionably provide a rational basis to support the Commission's decision to revoke parole. For all the foregoing reasons, the court concludes that petitioner is not entitled to federal habeas corpus relief.

**IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus is denied.

**IT IS SO ORDERED.**

Dated this 26th day of September, 2016 at Kansas City Kansas.

s/ John W. Lungstrum
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**